```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
MOCKINGBIRD 38, LLC,                                             :
                                                                 :
                         Plaintiff,                              :
                                                                 :                 21-cv-283 (LJL)
            -v-                                                  :
                                                                 :                OPINION AND ORDER
INTERNATIONAL BUSINESS TIMES, INC.,                              :
                                                                 :
                         Defendant.                              :
                                                                 :
-----------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/18/2022
```

LEWIS J. LIMAN, United States District Judge:

Mockingbird 38, LLC ("Plaintiff") brought an action against International Business Times, Inc. ("Defendant") alleging copyright infringement. *See generally* Dkt. No. 1 ("Compl."). Defendant has not appeared in or answered the action. Plaintiff obtained a Certificate of Default from the Clerk of Court, Dkt. No. 12, and now moves for default judgment against Defendant.

For the reasons discussed below, the motion for default judgment is granted in part and denied in part.

## BACKGROUND

By defaulting, Defendant has admitted the well-pleaded allegations of the complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). The complaint alleges as follows.

Plaintiff maintains a portfolio of photographs which it licenses to online and print publications. Compl. ¶¶ 2, 12. Defendant owns and operates websites known as ibtimes.sg and ibtimes.co.in, which "purposefully display celebrity and/or news photographs" and are monetized in that the websites contain "paid advertisements and/or sell merchandise to the

public." *Id.* ¶¶ 4, 17–18.  Plaintiff alleges that Defendant willfully violated Plaintiff's copyright of two photographs, one depicting Jamie Foxx ("Foxx Photo") and one depicting Justin Timberlake ("Timberlake Photo"), and that Defendant knowingly removed copyright management information ("CMI") for both photos upon publication on its website.

The Foxx Photo was authored on August 17, 2019.  Compl. ¶ 25.  On September 2, 2019, Plaintiff observed the Foxx Photo on one of Defendant's website's; the photo was posted in an article at the URL https://www.ibtimes.co.in/jamie-foxx-moving-katieholmes-coming-artist-sela-vave-803873.  *Id.* ¶¶ 28–29; *see also* Dkt. No. 1-2.  On January 5, 2020, Plaintiff applied to the United States Copyright Office ("USCO") for the Foxx Photo, and the photograph was registered by the USCO that same day.  Compl. ¶¶ 26–27.  The Timberlake Photo was authored on November 21, 2019.  *Id.* ¶ 19.  On December 7, 2019, Plaintiff observed the Timberlake Photo on another of Defendant's websites. *Id.* at ¶ 22.  It was displayed in an article posted to Defendant's website at the URL https://www.ibtimes.sg/alisha-wainwright-justin-timberlakescandal-hand-holding-boozy-night-sparks-rumours-35099.  *Id.* ¶ 23.  Plaintiff applied to the USCO for the Timberlake Photo on January 12, 2020, and that day, the Timberlake Photo was registered by the USCO.  *Id.* ¶¶ 20–21.  On May 5, 2020, Plaintiff sent a letter to Defendant requesting clarity on whether Defendant possessed a license for the photographs and proposing a settlement amount for each photograph if Defendant did not possess a license.  Dkt. No. 31-1.  On June 25, 2020, Plaintiff sent a second letter to Defendant by email alleging Defendant's violation of Plaintiff's copyright and reiterating Plaintiff's entitlement to a settlement.  Dkt. No. 31-2.

Plaintiff further alleges, upon information and belief, that Defendant copied the Foxx Photo from an online People Magazine article, where the photo had a gutter credit[1] beneath the photo crediting the agency that owned the Foxx Photo prior to Plaintiff. Compl. ¶ 61. Plaintiff alleges, also upon information and belief, that Defendant intentionally and knowingly removed that CMI identifying the agency from which Plaintiff acquired the Foxx Photo, in violation of 17 U.S.C. § 1202(b). *Id.* ¶¶ 62–63. Plaintiff alleges the same for the Timberlake Photo: that the Defendant copied it from an online The Sun article at the URL https://www.thesun.co.uk/tvandshowbiz/10409561/justin-timberlake-holds-hands-alishawainwright-strokes-knee-boozy/, which also included a credit identifying the previous owner of the photograph, and that Defendant subsequently removed that CMI prior to publishing the photograph on its website. *Id.* ¶¶ 59–60.

## PROCEDURAL HISTORY

Plaintiff filed this action on January 13, 2021, asserting claims for direct copyright infringement and violation of 17 U.S.C. § 1202, which relates to the integrity of copyright management information. *See* Compl. at ¶¶ 52–67. Plaintiff sought statutory damages against Defendant pursuant to 17 U.S.C. §§ 504(c) and 1203; an injunction pursuant to 17 U.S.C. § 502;[2] and expenses, costs, and attorneys' fees pursuant to 17 U.S.C. §§ 505 and 1203(b). *Id.* at 8–9. On January 15, 2021, Plaintiff caused Defendant to be served and filed proof of service. Dkt. No. 7. After Defendant failed to answer, appear, or otherwise respond to the complaint by

---

[1] "Gutter credit" refers to a type of copyright management information containing the name of an author or copyright owner that is not listed on the photograph itself but on "a separate line of text below the [p]hotograph but above article text." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 372 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020).
[2] Although an injunction was requested in Plaintiff's complaint, Plaintiff did not request an injunction in its motion for default judgment, and therefore the Court has only considered Plaintiff's request for damages, attorneys' fees, and other expenses.

3

February 5, 2021—the deadline for doing so— Plaintiff sought and obtained from the Clerk of Court a Certificate of Default against Defendant. *See* Dkt. Nos. 9, 12. On July 8, 2021, Plaintiff moved for default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55. Dkt. No. 22.

On October 7, 2021, the Court issued an Order (1) directing Plaintiff to either provide information as to why it is entitled to statutory damages and attorneys' fees for infringement as to the Foxx Photo or withdraw its request for an award under 17 U.S.C. §§ 504 and 505,[3] and (2) inviting Plaintiff to submit evidence of the cease-and-desist letters and Defendant's subsequent non-compliance. Dkt. No. 30. On October 19, 2021, Plaintiff withdrew its request for statutory damages for the Foxx Photo, clarifying that it requests only an award of the lost licensing fee of $1,750 for that photograph. Dkt. No. 31 ¶ 2. Plaintiff also provided the Court with copies of the cease-and-desist letter and subsequent demand its counsel sent to Defendant via email. Dkt. Nos. 31-1, 31-2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."

---

[3] The Court issued its Order in response to a claim in Plaintiff's complaint that it is entitled to statutory damages and attorney's fees for the Foxx Photo infringement, despite its ineligibility for such damages under 17 U.S.C. § 412 due to its copyright registration occurring more than three months after the initial publication of the photograph. Plaintiff's response to the Court's Order admitted that it is not entitled to statutory damages for the violation based on the information contained in its complaint and withdrew its request. Dkt. No. 31.

*Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action."  *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor."  *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).  In addition to considering the Plaintiff's complaint, "the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit . . . , or matters of which judicial notice may be taken."  *In re Bank of Am. AIG*

5

*Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)); *see also Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order). However, "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)); *see also In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("The court need not accept as true an allegation that is contradicted by the documents on which the complaint relies.").

A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiff "must therefore substantiate its claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*. 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order). To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

### I. Jurisdiction

This claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Court accordingly has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The complaint also contains well-pled allegations as to personal jurisdiction, including that Defendant International Business Times, Inc. has its principal place of business in New York County, New York. Compl. ¶¶ 7, 9.

### II. 17 U.S.C. § 501 Liability

Plaintiff alleges that it has copyright in the Foxx Photo and Timberlake Photo, and Defendant displayed the two photographs on its website without obtaining a license. Compl. ¶¶ 19–29. To prevail on a copyright infringement claim, a plaintiff must demonstrate: "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright. *Id.* at 51; *see* 17 U.S.C. § 410(c).

The Court concludes that Plaintiff's allegations of direct copyright infringement, in violation of 17 U.S.C. § 501, are well-pled and sufficient to establish liability. Plaintiff has demonstrated its ownership of copyright for both photographs. Compl. ¶¶ 20–21, 26–27. Plaintiff has attached to its complaint the Foxx Photo and the Timberlake Photo, Dkt. No. 1-1, and screenshots of the use of the photographs on Defendant's website, Dkt. No. 1-2. The images are identical. These allegations are sufficient to make out a claim for copyright infringement and

default judgment is granted for these claims. *See Verch v. Blockchain Techs. Corp.*, 2021 WL 1198784, at *1 (S.D.N.Y. Mar. 30, 2021).

### III. 17 U.S.C. § 1202(b) Liability

Plaintiff alleges that Defendant took both photographs from other publications that displayed CMI and intentionally removed the CMI prior to publication on its website. In order to establish a violation of 17 U.S.C. § 1202(b), a plaintiff must demonstrate that the defendant "without the authority of the copyright owner or the law . . . intentionally remove[d] or alter[ed] any copyright management information." 17 U.S.C. § 1202(b). Copyright management information is identifying information about the author or copyright holder "conveyed in connection with" the work, including gutter credits. 17 U.S.C. § 1202(c); *see also Mango*, 356 F. Supp. 3d at 377–78 (finding that a gutter credit constitutes CMI even though it is displayed beneath a work rather than on the work itself).

Plaintiff's allegations of removal of CMI relating to the publication of the two photos, in violation of 17 U.S.C. § 1202(b), are not adequately pleaded, and default judgment for these claims is therefore denied. Plaintiff's complaint alleges Defendant removed CMI for the Timberlake Photo, Compl. ¶¶ 59–60, but the screen capture of the photo in Defendant's published article attached to Plaintiff's complaint includes both a watermark in the bottom left corner of the photo that reads "© MEGA" and a gutter credit reading "(Mega Agency)." Dkt. No. 1-2 at 1. This allegation is therefore directly contradicted by the screenshot attached to Plaintiff's complaint and cannot be taken as true for the purpose of default judgment. *See TufAmerica, Inc.*, 968 F. Supp. 2d at 592.

Plaintiff's claim of removal of CMI for the Foxx Photo is grounded in its assertions that Defendant took the photograph from an online People Magazine article at the URL

8

https://people.com/movies/jamie-foxx-holdshands-with-sela-vave/, where there was included a gutter credit "CREDIT: MEGA," Compl. ¶¶ 61–62, and the photo published by Defendant did not include any CMI. Dkt. No. 1-2 at 2. While there is no CMI on the Foxx Photo published by Defendant, upon review of the People Magazine URL referenced in Plaintiff's complaint,[4] the photograph appearing at that URL is not the same photograph as the photograph Defendant published and over which that Plaintiff asserts copyright. *Compare* Fig. 1 *with* Fig. 2.

---

[4] The Court finds the content of the People Magazine article at the URL relied upon in the complaint to be incorporated by reference, and therefore the Court can properly review it in considering this motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material,"); *see also Quintanilla v. WW Int'l, Inc.*, 2021 WL 2077935, at *9 n.7 (S.D.N.Y. May 24, 2021) (finding the content of defendant's website to be incorporated by reference in Plaintiff's complaint through a referenced URL); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 (S.D.N.Y. 2009) (Chin, J.) ("Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss.") (collecting cases).

9

 

Fig. 1 (Dkt. Nos. 1-1 at 2, 1-2 at 2)     Fig. 2 (People Magazine)

Therefore, Plaintiff's allegations of removal of CMI for both photographs are not sufficiently supported by the complaint, and default judgment on these claims cannot be granted.

## IV. Damages

Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, . . . or (2) statutory damages as provided by subsection (c)." 17 U.S.C. § 504(a). Furthermore, a plaintiff is only entitled to statutory damages for a violation if the registration of copyright was made within three months of the first publication of the work. 17 U.S.C. § 412.

"The court has broad discretion to select the amount of the damages award within the pertinent statutory range" of $750 to $30,000 per violation, with a possible willfulness enhancement up to $150,000 under 17 U.S.C. § 504(c). *Parsons v. Bong Mines Ent. LLC*, 2021

WL 931506, at *8 (E.D.N.Y. Feb. 18, 2021).  In exercising its discretion to determine the amount of statutory damages to award in a copyright infringement case, courts in this Circuit consider six factors set forth in *Bryant v. Media Right Products, Inc.*, 603 F.3d 135 (2d Cir. 2010):

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Id.* at 144.

Since the Court has granted default judgment for Plaintiff's claims of copyright infringement, Plaintiff is entitled to damages for both violations.  Plaintiff requests an award of actual damages for the Foxx Photo in the amount of the lost licensing fee of $1,750, since the violation is not eligible for statutory damages due to the registration of copyright being made more than three months after the initial publication of the work.  Dkt. Nos. 25 at 4, 31.  Plaintiff seeks an award of statutory damages for the Timberlake Photo in the amount of four times the licensing fee of $10,000 for the photograph, amounting to $40,000.  Dkt. No. 25 at 4; Dkt. No. 23 at 16–17.  Plaintiff emphasizes the willful nature of Defendant's conduct, evinced by Defendant's non-response to Plaintiff's multiple notices of the breach of copyright, its continued display of the photographs on its website, and its non-response to the complaint or the motion for default judgment in the instant action.  Dkt. No. 23 at 15–16 (citing *Howarth v. FORM BIB LLC*, No. 18-CV-7047, 2020 WL 3441030, at *3 (S.D.N.Y. May 11, 2020), *report and recommendation adopted*, 2020 WL 3436685 (S.D.N.Y. June 22, 2020) ("In cases of willful infringement, an award should 'discourage wrongful conduct, as well as . . . provide reparation

for injury.'") (quoting *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, at 197–98 (S.D.N.Y. 2016)).

With respect to the first *Bryant* factor, Plaintiff has put forth evidence that Defendant's conduct was willful beyond its default, through evidence of ignored cease-and-desist letters and the continued display of the images at issue on Defendant's website. *See Verch v. Sea Breeze Syrups, Inc.*, 2020 WL 7407939, at *4 (E.D.N.Y. Aug. 20, 2020), *report and recommendation adopted*, 2020 WL 7402209 (E.D.N.Y. Dec. 17, 2020) ("[I]n cases where plaintiffs have received maximum or substantial statutory damages for violations of the Copyright Act, there is typically additional evidence of willfulness or allegations of actual awareness of the infringing activity on the part of defendants aside from a default, such as a cease-and-desist letter to the defendant or a request for injunctive relief.") (citing *Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.*, 2013 WL 174226, at *3 (S.D.N.Y. Jan. 17, 2013) (noting two cease-and-desist letters in awarding $30,000 in statutory damages), *report and recommendation adopted*, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc*, 826 F. Supp. 2d 619, 631–32 (S.D.N.Y. Nov. 10, 2011) (granting plaintiff's request for $150,000 in statutory damages in copyright case where defendant received notice that it no longer had authorization to use copyright prior to lawsuit); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 478–82 (S.D.N.Y. 2001) (finding many copyright infringements and awarding various amounts in damages ranging from $2,500 to $100,000 depending on whether the infringement in a given time period was willful)).

Plaintiff has also demonstrated it incurred a loss by the non-payment of the licensing fee of $10,000. Plaintiff has not attempted to calculate the amount of Defendant's unlawful gain through the infringement, although any such attempt would be frustrated by the lack of discovery

due to Defendant's default. In considering copyright infringement cases such as this one, courts in this Circuit have typically awarded statutory damages approximately three to five times the licensing fee at issue. *See, e.g.*, *Erickson Prods., Inc. v. Only Websites, Inc.*, 2016 WL 1337277, at *3 (S.D.N.Y. Mar. 31, 2016) ("In willful copyright infringement cases, 'trebling the licensing fee . . . is in line with the general approach taken by courts' in calculating statutory damages.") (quoting *Nat'l Photo Grp., LLC v. Bigstar Ent., Inc.*, 2014 WL 1396543, at *4 (S.D.N.Y. Apr. 11, 2014), *report and recommendation adopted*, 2014 WL 5051275 (S.D.N.Y. Oct. 8, 2014)) (collecting cases); *Broad. Music, Inc.*, 158 F.Supp.3d at 199 n.12 (collecting cases demonstrating a pattern of recovery in copyright infringement cases of statutory damages which are three to five times licensing fees).

In light of the Court's consideration of these factors and the statutory damages calculations of other courts in this Circuit, the Court concludes that Plaintiff is entitled to a statutory damages award of $30,000 for the Timberlake Photo, in addition to an actual damages award of $1,750 for the Foxx Photo, totaling $31,750.

### V. Attorneys' Fees and Costs

Plaintiff also seeks reimbursement for its costs incurred in pursuing this action and attorneys' fees under 17 U.S.C. § 505. 17 U.S.C. § 505 provides that "the court in its discretion may allow the recovery of full costs by or against any party," and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Plaintiff has demonstrated that it incurred costs in the amount of $402 for a filing fee and a $79 service of process fee paid to Lightning Legal Services, Inc. Dkt. No. 24 at 2. In addition to the $481.00 in charges sustained in connection with this action, Plaintiff also requests $12,200 in attorneys' fees. *Id.* at 3–5.

In determining whether to award attorney's fees under 17 U.S.C. § 505, "district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively reasonable; and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144 (internal citations omitted). "The third factor—objective reasonableness—should be given substantial weight." *Id.* The Court finds that awarding attorney's fees and other costs is warranted in this case where Defendant has defaulted, its infringement was found to be willful, and such an award will further serve the goal of deterrence of copyright infringement. See *Kepner–Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999) (affirming award of attorneys' fees and costs where defendant's copyright infringement was willful).

The Court now turns to the appropriate award amount. As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011). A court's focus is "on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008). The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the

case effectively." *Id.* at 190.  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, the court may reduce the requested rate. *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable. The court "should exclude excessive, redundant or otherwise unnecessary hours[.]" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

In support of its application for attorneys' fees, Plaintiff's counsel has submitted billing records indicating that Craig B. Sanders, a partner at the firm Barshay Sanders PLLC, billed a total of 15.2 hours at a rate of $700 per hour; Jonathan M. Cader, a senior associate with the firm, billed a total of 2.9 hours at a rate of $500 per hour; and various administrative tasks were completed in 1.1 hours at a rate of $100 per hour, totaling $12,200 billed.

Although courts in this Circuit have found such rates to be at the high end of a reasonable range of rates for partners and associates, *Capitol Records, Inc. v. MP3Tunes, LLC*, 2015 WL 7271565 at *4 (S.D.N.Y. 2015), this Court agrees with other courts in this District that have considered these rates at Barshay Sanders PLLC in context of the firm's size and location and found them to be in excess of a reasonable rate for copyright cases.  *See FameFlyNet, Inc. v. Shoshanna Collection, LLC*, 2018 WL 671267, at *2–3 (S.D.N.Y. Feb. 1, 2018) (granting reasonable attorneys' fees for Sanders at a rate of $400 an hour and $265 an hour for two associates); *Barcroft Media, Ltd. v. Fashion In Me Inc.,* 2018 WL 4565889, at *5–7 (S.D.N.Y. June 5, 2018), *report and recommendation adopted,* 2018 WL 4568727 (S.D.N.Y. July 25, 2018) (granting reasonable attorneys' fees for Sanders at a rate of $500 an hour and $300 an hour for an associate).  This Court finds a rate of $500 an hour to be reasonable for Mr. Sanders and $300 an hour to be reasonable for Mr. Cader.  *See, e.g.*, *Tetra Images, LLC v. Grahall Partners, LLC*,

15

2021 WL 2809566, at *4 (S.D.N.Y. July 6, 2021) (finding rates of $475 per hour for a managing partner, $450 per hour for a partner, and $200 per hour for a summer associate to be reasonable); *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 2020 WL 2848232, at *6–7 (S.D.N.Y. June 1, 2020) (noting that courts in this district have found rates of $400 to $750 an hour for partners and $200 to $450 for associates to be reasonable in copyright cases); *Bass v. Diversity Inc. Media*, 2020 WL 2765093, at *6 (S.D.N.Y. May 28, 2020) ("A review of cases in this District and in the Eastern District of New York suggests that courts have approved associate rates of $350 and up to $500 for partners in copyright cases.").

Furthermore, multiple entries on the billing records appear to be administrative in nature but billed at Mr. Sanders' partnership rate of $700 per hour rather than the administrative rate of $100 per hour. Dkt. No. 24 at 3–5. The entry from January 13, 2020, described as "ECF case initiation of new matter; filed request for summons; complaint; civil cover sheet; A0121," was billed at 0.4 hours at the partnership rate, totaling $280, rather than $40 at the administrative rate. *Id.* at 3. Another entry from February 9, 2021, billed 1 hour at Mr. Sanders' rate for "Preparation and filing of Request for Clerk's Default and Affidavit in Support; ECF filing of same; review resulting ECF bounces," even though ECF filings and review had been billed as administrative elsewhere in the records. *Id.* at 4. This Court finds that these entries should be billed at the administrative rate. The Court grants Plaintiff attorneys' fees totaling $8,020, calculated at the rates determined above.

Plaintiff also seeks $481 for the $402 filing fee and the $79 personal service fee. "Attorneys' fees may include reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Idir*, 2020 WL 4016425, at *4 (quoting *Reilly v. Commerce*,

16

2016 WL 6837895, at *13 (S.D.N.Y. Oct. 31, 2016)). Thus, the request for $481 in costs is also granted.

## CONCLUSION

Default judgment is GRANTED in part and DENIED in part.

The Clerk of Court is respectfully directed to prepare a judgment against International Business Times, Inc. reflecting the Court's holding and setting forth Mockingbird 38, LLC's damages as follows:

- $31,750 in actual and statutory damages for copyright infringement in violation of 17 U.S.C. § 501.

- The Court also awards attorneys' fees in the amount of $8,020 and costs in the amount of $481 pursuant to 17 U.S.C. § 505.

- The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

The Clerk of Court is directed to close this case. The Court directs Plaintiff to transmit a copy of this Order to Defendants through any means they have previously used to communicate with Defendant.

SO ORDERED.

Dated: January 18, 2022
      New York, New York

LEWIS J. LIMAN
United States District Judge